MICHAEL B. LOVE
MICHAEL LOVE LAW, PLLC
905 West Riverside Ave. Ste. 404
Spokane, Washington 99201
Telephone:  (509) 309-2787
Facsimile:   (509) 309-2788
mike@michaellovelaw.com

MATTHEW Z. CROTTY
CROTTY & SON LAW FIRM, PLLC
905 West Riverside Ave. Ste. 404
Spokane, Washington 99201
Telephone: (509) 850-7011
matt@crottyandson.com

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| FARLEY WALKER AND THE MARITAL COMMUNITY COMPOSED THEREOF,<br><br>        PLAINTIFF,<br><br>   v.<br><br>ELLENSBURG SCHOOL DISTRICT AND ELLENSBURG BOARD OF DIRECTORS, AND INDIVIDUALLY MICHAEL NOLLAN, CURTIS BULL, HEATHER HAZLETT, DAN SHISSLER, JENNIFER HACKETT, AND JONATHAN LEONARD,<br><br>        DEFENDANTS. | CASE NO.<br><br>COMPLAINT FOR DAMAGES ALLEGING TORTIOUS AND WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY, WRONGFUL DISCHARGE BASED ON BREACH OF PROMISE, 42 U.S.C. § 1983 RELATING TO CONSTITUTIONAL VIOLATIONS, BREACH OF A WRITTEN CONTRACT AND AGE AND GENDER DISCRIMINATION IN VIOLATION OF RCW 49.60.180 AND DEMAND FOR JURY TRIAL |

COMPLAINT AND DEMAND FOR JURY TRIAL - 1

Plaintiff, Farley Walker, through his attorneys, now alleges:

## I.    PARTIES AND JURISDICTION

1. Defendant, ELLENSBURG SCHOOL DISTRICT NO. 401 ("District") is a municipal government agency located in the State of Washington.

2. Defendant, ELLENSBURG BOARD OF DIRECTORS ("Board") are elected officials who are charged with, among other things, setting policy, approving contracts, and evaluating the performance of the Superintendent of the District.

3. Michael Nollan ("Nollan") is the interim Superintendent who wrongfully discharged Plaintiff.

4. Curtis Bull ("Bull"), Heather Hazlett ("Hazlett"), Dan Shissler ("Shissler"), Jennifer Hackett ("Hackett"), and Jonathan Leonard ("Leonard") were, at the time of Plaintiff's wrongful discharge, the elected Board members of the District.

5. Plaintiff, Farley Walker ("Mr. Walker"), resided in Ellensburg, Washington at all times relevant to this lawsuit.

6. All acts complained of occurred within the Eastern District of Washington ("Eastern District").

7. The Federal Court for the Eastern District has personal jurisdiction over the parties and subject matter jurisdiction over the claims in this complaint pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a).

COMPLAINT AND DEMAND FOR JURY TRIAL - 2

8. Venue is proper in the Eastern District under 28 U.S.C. § 1391(b) because the acts and omissions complained herein occurred in the Eastern District and Defendant conducts business there.

9. On May 15, 2017, Mr. Walker through his attorneys emailed and mailed a RCW 4.96.020 Notice of Tort Claim to the District.  On June 27, 2017, Mr. Walker through his attorneys emailed and mailed via regular mail an Amended Notice of Tort Claim to the District.  Sixty days have expired since June 27, 2017, therefore Mr. Walker has complied with the administrative preconditions of filing this lawsuit and the statute of limitations regarding his federal and state claims were tolled during that sixty day timeframe and the five court days following.

## II. INTRADISTRICT ASSIGNMENT

10. This action arose in Kittitas County, Washington.  Therefore, Mr. Walker respectfully requests that the case be assigned to the Yakima Division of the Eastern District of Washington.

## III. FACTS

11. Mr. Walker re-alleges the above paragraphs one through ten as if fully set forth herein.

12. Mr. Walker is over 40 years of age and is a white male.  Mr. Walker's date of birth is October 27, 1952.

COMPLAINT AND DEMAND FOR JURY TRIAL - 3

13. Mr. Walker has an undergraduate degree Bachelors of Business Administration, Accounting, from the University of Texas, at Austin, Texas, and a Masters' of Science in Accounting (Financial Reporting and Auditing) from Texas Tech University, at Lubbock, Texas wherein he received a GPA of 4.0.

14. Mr. Walker is a licensed Certified Public Accountant (CPA) in Texas and Washington State.

15. Mr. Walker is a Veteran who served and retired after twenty (20) years in the United States Navy as a Naval Flight Officer who obtained the rank of Commander (0-5), with a Security Clearance of Top Secret. Mr. Walker in the Navy was an Air Wing Strike Leader/Mission Commander with over 3,600 flight hours.

16. Mr. Walker was employed by the District from 2003 until he was wrongfully terminated by the interim Superintendent Nollan on April 13, 2017, before the end of the school year, under the pretext that "I have determined that it is in the best interests of the District to relieve you from any further duties under your current contract."

17. As will be established during the course of this litigation, the District's proffered reason and choice not to renew Mr. Walker's contract for the next school year was a *pretext* to hide or shade the District's discriminatory and retaliatory motives and real intent to discharge him from employment. The nonrenewal decision was an illegal scheme perpetrated by the individual Board members and the

COMPLAINT AND DEMAND FOR JURY TRIAL - 4

interim Superintendent to avoid the District and Board's obligations under the law as it related to Mr. Walker's right to only be terminated *for cause* before the end of his current contract as a classified staff member.  Thus the District's decision to not renew Mr. Walker's contract for another school year in 2017-2018 was based on illegal reasons.

18.  The *pretext* is evidenced by the documented meetings the Board had with the former Superintendent Dr. Paul Farris ("Dr. Farris") which resulted in an Action Plan presented by the Board to Dr.  Farris relating to alleged behavior problems on the part of Mr. Walker defined as follows:  angry outbursts, insubordination, yelling and other hostile and belittling behavior toward staff, and acting outside of his role as the Executive Director of Business Services ("Executive Director").  Dr. Farris disagreed with the Board's assessment of Mr. Walker's job performance and behavior in the workplace.

19.  As a result, the Board, beginning Wednesday, January 11, January 16, and January 20, 2017, met in Executive Session without Dr. Farris being allowed to attend for the purpose of Executive Session.  The Executive Session, as required by the Open Meetings Act, was regarding: "The Performance of a School District Employee" which was highly unusual.

20.  On January 12, 2017, Amy Mills ("Mills"), Administrative Assistant to the Superintendent asked Kim Snider ("Snider") Human Resource Director for the

COMPLAINT AND DEMAND FOR JURY TRIAL - 5

District, if an employee could be fired with good evaluations.  Snider responded that someone with good evaluations could not be fired.  Mills later asked Snider if Mr. Walker could be fired. Mills clearly had a vendetta against Mr. Walker as will be shown below.

21.  The Board later tasked Dr. Farris with the responsibility for taking action to ensure that Mr. Walker's "continued employment is conditioned upon the cessation of the problematic behaviors identified above."  Additionally, the Board stripped Mr. Walker of his duty to present future budgets to the Board and ordered Dr. Farris in the future to present the budgets to the Board.  The Board also ordered Dr. Farris to provide beginning February 28, 2017, with a "status report" relating to Mr. Walker's "job performance and behavior in the workplace." Dr. Farris complied by providing the Board with truthful and outstanding performance evaluations and status reports relating to Mr. Walker.  As a result of Dr. Farris' refusal to go along with the Board's attempts to wrongfully destroy the professional reputation and career of Mr. Walker by condoning and being complicit in their scheme, Dr. Farris was wrongfully terminated by the Board on April 4, 2017, and replaced by Nollan.

22.  Mr. Walker had a "property interest" in his job working for the District based upon statute, contract and the District's own policies which the District and Board were well aware of.  Mr. Walker could be terminated only for cause.  Mr. Walker was entitled to pre-termination notice of termination and an opportunity to

COMPLAINT AND DEMAND FOR JURY TRIAL - 6

respond either in writing or verbally to the Superintendent proposing his removal. Mr. Walker was also entitled based upon statute, contract and the District's own policies to post-termination notice of his right to appeal his termination and right to an adversarial hearing before an Administrative Law Judge. The District failed to provide Mr. Walker with both pre-termination and post-termination notice.

23. Mr. Walker's contract cited two statutes providing a property interest in the jobs of certificated employees. As a result, those certificated employees were entitled to job protection in that they could only be terminated for cause. Mr. Walker's contract did not specify that his employment with the District was at will and therefore subject to termination either with or without cause, without notice, and at the sole discretion of the District. This is obvious, since statutory law, his own contract, and the District's policies provided that whether Mr. Walker was a certificated or classified employee or a hybrid of both he could only be terminated for cause and was entitled to the pre and post termination notice set forth above.

24. The District's own written policies relating to certificated staff under Procedure 5280P provided that certificated staff shall receive notice of any deficiencies in performance and the right to a probationary period and reasonable plan for improvement. Mr. Walker was never provided notice of any deficiencies in his performance or the right to a probationary period and reasonable plan for improvement.

COMPLAINT AND DEMAND FOR JURY TRIAL - 7

25.  The District's written policies also provided that the "Board shall consider the termination of a classified staff member based upon the recommendation of the superintendent.  The notice of termination shall include notice of any appeal rights the employee may have and notice of the appeal process."  Mr. Walker was never provide any such notices.

26.  Additionally, pursuant to District policy a "classified staff" member "whose performance does not satisfy the needs of the District shall receive written notification from the administrator."  Such written notice shall contain the following information:

> A. Subject to the action of the board of directors, the final date of employment with the district.
> B. The right to request a pre-termination meeting within five (5) working days following notice.
> C. Notice of any appeal rights that the employee may have and notice of the appeal processes.

Mr. Walker was never provided written notice nor the information set forth in A., B., and C. of the District's policy.

27.  The District identified Mr. Walker as a classified staff member based upon his position as Executive Director.  As a result, this policy which amounts to an enforceable promise was breached by the District prior to his wrongful termination on April 13, 2017.  Mr. Walker was aware of the written policy relating to classified staff prior to his termination and justifiably relied upon it, including

COMPLAINT AND DEMAND FOR JURY TRIAL - 8

written policies relating to certificated staff if it is later determined by a court or jury that he was certificated, classified or a hybrid of both.

28.  A certificated or classified staff member like Mr. Walker could only be terminated for cause under Washington law.  RCW 28A.400.300 (1) (a)

29.  Mr. Walker was also protected from discrimination, since the provisions of chapter 49.60 RCW apply to the employment of certificated and classified employees.  RCW 28A.400.310

30.  Mr. Walker's performance as Executive Director was outstanding based upon the performance evaluations that he received from three different superintendents that he served under, including Dr. Farris.  Mr. Walker over a 14 year period with the District was consistently rated as exceeds expectations on all performance evaluations as the Executive Director and never received any formal discipline.

31. As the Executive Director for the District, Mr. Walker was responsible for increasing the District's fund balance from $239,000 in March of 2003 to an end of year projection of $5.8 Million at the time of his wrongful discharge.

32. During his tenure as Executive Director, the District passed all audits with flying colors.  Mr. Walker was recently recognized by the Washington State Auditor's Office ("Auditor's Office") for his work.  Mr. Walker was presented by the Auditor's Office with a stewardship award, the first time a school district had

COMPLAINT AND DEMAND FOR JURY TRIAL - 9

been recognized. Because of Mr. Walker's stewardship last year, Moody's, a bond credit rating business, recognized the District's strong fiscal health and upgraded its bond rating from A1 to Aa3, a move that both saves the taxpayers money and attracts investors.

33. Mr. Walker reported to the Board of the District who, at the time of his wrongful discharge, were made up of the following elected officials: Bull, Hazlett, Shissler, Hackett and Leonard.

34. Mr. Walker reported to the Board that the District's Special Education Program was out of balance and was not cost contained. The Board, in particular, Hazlett was openly hostile and dismissive of these concerns of waste of public funds raised by Mr. Walker.

35. In February of 2017, Mr. Walker was blocked by the Board from attending in person and providing reports at the Board's open Board Meetings.

36. Mr. Walker had disclosed to the Board that the Director of Special Education, Patty Kimmel, had failed to seek Medicaid reimbursements through the Washington State Health Care Authority for school based healthcare services provided to disabled students.

37. Mr. Walker had also disclosed and reported during his recent employment with the District abuse of overtime by Mills to the District and later the Auditor's Office. Although the Auditor's Office found no abuse of overtime, Mr. Walker's

COMPLAINT AND DEMAND FOR JURY TRIAL - 10

1    reporting of such was protected activity because he had a good faith and reasonable

2    belief that this was in violation of the law and that he had a duty to report any waste

3    of government funds.

4         38.   Mr. Walker had also complained to the District about the behavior of

5    Mills towards him which he in good faith and reasonable belief felt amounted to an

6    illegal and hostile work environment.  The District had, in fact, hired outside counsel

7    to investigate this matter which amounted to charges being alleged by both Mr.

8    Walker and Mills against each other.  Again, although the outside counsel did not

9    determine that the workplace amounted to an illegal and hostile work environment,

10   by reporting the behavior of Mills to the District this remained protected activity.

11        39.  Mills had obvious animus towards Mr. Walker relating to his reporting of

12   her behavior and abuse of overtime.

13        40.  Mills, over time, was granted full access to the Board and was appointed

14   Secretary to the Board although Dr. Farris' contract specifically provided that he

15   would be Secretary to the Board.

16        41.  Mills had undue influence over the Board.  As time passed Mills had

17   developed what could be described as an "emotional relationship" with one Board

18   Member, Bull, which was evidenced by inordinate and lengthy behind closed door

19   meetings.  The Director of Human Resources for the District later advised that this

20   type of behavior was inappropriate.

COMPLAINT AND DEMAND FOR JURY TRIAL - 11

42.  The Board and Nollan were aware of the animus and allowed Mills to provide input and undue influence under a *Cat's Paw* theory of liability which lead to Mr. Walker's wrongful discharge.

43.  Although Mills had been accused of allegedly the same behavior in the workplace that Mr. Walker had been accused of and which was not substantiated after an investigation was completed by outside counsel retained by the District, Mills was not discharged or non-renewed by the District.  Instead, Mills was promoted to a new classified staff member position, Student Record Specialist.  This promotion was effective July 1, 2017.

44.  As part of the April 12, 2017, Regular Board Meeting package, Mr. Walker provided written monthly financial materials to the Board of Directors which they reviewed at their April 10, 2017, Study Session.  The written monthly financial materials disclosed that the District's Special Education Program was out of balance and lacked cost containment.  Mr. Walker also disclosed that Kimmel had failed to apply for a safety net grant for Special Education in 2017 through the Office of the Superintendent of Public Instruction ("OSPI").  Mr. Walker also disclosed to the Board that Kimmel had failed to seek Medicaid reimbursements through the Washington State Health Care Authority for school based healthcare services provided to disabled students.

COMPLAINT AND DEMAND FOR JURY TRIAL - 12

45. On April 13, 2017, Mr. Walker was terminated without cause by Nollan in *close proximity* to his last protected activity -- one day.

46. Mr. Walker planned on working for the District for another ten (10) years.

## IV. CLAIMS

### 1. *Wrongful Discharge in Violation of Public Policy ("Whistleblower" and "Exercising a Legal Right or Privilege")*

47. Mr. Walker hereby reincorporates and reasserts paragraphs 1 through 46 as if fully set forth herein.

48. Employees in Washington are protected from being discharged in violation of a clear mandate of public policy. The stated public policy is either legislatively or judicially recognized. *Thompson v. St. Regis Paper Company*, 102 Wash.2d 219, 232, 685 P.2d 1081 (1984).

49. Once a plaintiff shows the violation of a public policy, the burden shifts to the employer to prove the dismissal was for reasons other than those alleged by the employee. *Thompson*, 102 Wash.2d at 233. *See also Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wash.2d 46, 70, 821 P.2d 18 (1991) ("Employer must articulate a legitimate non-pretexual non-retaliatory reason for the discharge.").

50. Following *Thompson*, the tort of wrongful discharge in violation of public policy has been recognized in four (4) different situations: (1) where employees are fired for refusing to commit an illegal act; (2) where employees are fired for

COMPLAINT AND DEMAND FOR JURY TRIAL - 13

1    performing a public duty or obligation, such as serving jury duty; (3) where

2    employees are fired for exercising a legal right or privilege, such as filing workers'

3    compensation claims; and (4) where employees are fired in retaliation for reporting

4    employer misconduct, i.e., whistleblowing.  Under each scenario, Mr. Walker is

5    required to identify the recognized public policy and demonstrate that the District

6    and Board contravened the policy by terminating his employment.

7        51.   Washington courts apply a three-step, burden-shifting test taken from

8    *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).[1]  *See, e.g. Scrivener v.*

9    *Clark Coll.*, 334 P.3d 541 (Wash. 2014) (applying the *McDonnell Douglas*

10   framework in the employment discrimination context).

11       52.   The first step is for Mr. Walker to make out a prima facie case for

12   retaliatory discharge.  *See Wilmot v. Kaiser Aluminum & Chem. Corp.*, 821 P.2d 18,

13   28-29 (Wash. 1991).  To do so, Mr. Walker "need not attempt to prove the District

14   and Board's sole motivation was retaliation."  *Wilmot,* 821 P.2d at 30.  Rather, Mr.

15   Walker need only produce evidence – even if circumstantial – that his actions, which

16

17   [1] As Mr. Walker's claim fits within common and previously-recognized wrongful
     discharge scenarios, the Court need not apply the four-factor "Perritt analysis" to
18   determine whether Mr. Walker has alleged a violation of public policy that warrants
     recovery.  *See Gardner v. Loomis Armored Inc.*, 913 P.2d 377, 382 (Wash. 1996)
19   ("Because this situation does not involve the common retaliatory discharge scenario,
     it demands a more refined analysis than has been conducted in previous cases."
20   (citing Henry H. Perritt, Jr., *Workplace Torts: Rights and Liabilities § 3.7 (1991))).*
     COMPLAINT AND DEMAND FOR JURY TRIAL - 14

were in furtherance of public policy, were "a cause of the firing." *Id.* at 30; *see also,*

*Rickman v. Premera Blue Cross*, 358 P.3d 1153, 1160 (Wash. 2015).

53. At the second step, the burden of production shifts to the District and

Board, who must articulate a legitimate, non-retaliatory reason for the discharge.

*Wilmot,* 821 P.2d at 29.

54. The third step requires that Mr. Walker respond to the District and Board's

proffered reason by showing either (1) the employer's articulated reason is pretext,

or (2) even if the employer's stated reason is legitimate, retaliation for protected

conduct was nevertheless a substantial motivating factor. *Wilmot*, 821 P.2d at 31.

55. Mr. Walker will be able to produce *sufficient evidence* to not only survive

summary judgment but also prevail in front of a jury of his peers.

56.  By reporting the alleged abuse of overtime to the Auditor's Office and

hostile work environment on the part of Mills, and concerns about waste of

government funds relating to the District's Special Education Department, Mr.

Walker was engaged in protected activity as a *whistleblower* and also *exercising a*

*legal right or privilege.*

57.  Mr. Walker's reporting and engagement in protected activity was a

*substantial factor* for his discharge without cause.

COMPLAINT AND DEMAND FOR JURY TRIAL - 15

58.  As a consequence, Mr. Walker has sustained substantial damages and is entitled to recover both special and general damages.

### 2. Wrongful Discharge Based Upon Breach of Promise

59.  Mr. Walker hereby reincorporates and reasserts paragraphs 1 through 58 as if fully set forth herein.

60.  Washington law provides for a wrongful discharge action premised on breach of promise.  The Washington Supreme Court has stated that, "Once an employer announces a specific policy or practice, especially in light of the fact that he expects employees to abide by the same, the employer may not treat its promises as illusory."  *Thompson v. St. Regis Paper Co.*, 102 Wash.2d 219, 230, 685 P.2d 1081.  "If an employer, for whatever reason, creates an atmosphere of job security and fair treatment with promises of *specific treatment in specific situations* and an employee is induced thereby to remain on the job and not actively seek other employment, those promises are enforceable components of the employment relationship."  *Id.* at 230.  The Washington Supreme Court further held in *Thompson*: "It would appear that employers expect, if not demand, that their employees abide by the policies expressed in such manuals.  This may create an atmosphere where employees *justifiably rely* on the expressed policies, and, thus, justifiably expect that the employers will do the same."  *Id.*

COMPLAINT AND DEMAND FOR JURY TRIAL - 16

61.  In order to prevail on this claim, Mr. Walker must prove the following elements:  (1) that the statements in the District's policies amounted to promises of specific treatment in specific situations; and (2) that Mr. Walker justifiably relied upon those *promises*; and (3) that the *promises* of specific treatment were breached. *Bulman v. Safeway*, 144 Wash.2d 335, 27 P.3d 1172, 1177 (2001).

62. The District and Board had written policies and procedures, in particular, Procedure 5280P that contained enforceable promises that Mr. Walker as either a certificated or classified staff or a hybrid of both could only be discharged for cause, and was entitled to pre-termination notice in writing.  Mr. Walker was also entitled to notice of any appeal rights the employee may have and notice of the appeal process.

63.  The notice provisions and rights contained in Procedure 5280P amounted to promises of specific treatment in specific situations.

64.  Mr. Walker was aware of these promises prior to his termination and therefore justifiably relied upon those promises.

65. As a result of the District's failure to follow Procedure 5280P the promises of specific treatment were breached.

66. As a consequence, Mr. Walker has suffered special damages which he is entitled to recover.

1

2    ***3. Federal Claim Violation Procedural Due Process Section 1983***

3    67.  Mr. Walker reincorporates and reasserts paragraphs 1 through 66 as if

4    fully set forth herein.

5    68.  Mr. Walker alleges pursuant to 42 U.S.C § 1983, that the District, Board

6    and individual Board members violated his Fourteenth Amendment right to

7    procedural due process by failing to provide him with pre-termination notice and

8    post-termination notice of his right to appeal his termination and to an adversarial

9    hearing before an administrative law judge.

10    69.  The Civil Rights Act (42 U.S.C. § 1983) authorizes an individual to bring

11    suit against "any person acting under color of law who deprives another 'of any

12    rights, privileges, or immunities secured by the Constitution and laws' of the United

13    States." *S. Cal. Gas Co. v. City Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003) (quoting

14    42 U.S.C. § 1983).   The rights guaranteed by section 1983 are "liberally and

15    beneficially construed."  *Dennis v. Higgins*, 498 U.S. 439, 443, 111 S. Ct. 865, 112

16    L.Ed.2d 969 (1991) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658,

17    684, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978)).

18    70.  At some or all times relevant to this action, each of the individual

19    defendants, Bull, Hazlett, Shissler, Hackett and Leonard, were acting in his or her

20
COMPLAINT AND DEMAND FOR JURY TRIAL - 18

official capacity.  At some point, each of the Defendants were also acting in his or her personal capacity, in that he or she personally participated in, expressly or tacitly authorized, or was deliberately indifferent with respect to the conduct described herein.

71.  The District, Board and individual Board members are "persons" within the meaning of 42 U.S.C. § 1983.  All actions taken by the Defendants in relation to Mr. Walker were taken under the color of law.

72.  All actions taken by the District, Board and individual Board members in relation to Mr. Walker were also taken pursuant to a governmental policy or custom in that (a) these actions were taken pursuant to a long-standing practice or custom of the District, Board and individual Board members with final policymaking authority, such as these actions constituted an act of official governmental policy; and/or, (b) these actions were ratified by one or more District or Board officials with final policymaking authority.

73.  Without limitation, the "long-standing practice or custom" of the District and Board included their awareness that Nollan terminated Mr. Walker's employment in knowing disregard of Mr. Walker's property interest in his job and protections that flow from that interest.  The District was informed, in writing, via

1    (at least) Mr. Walker's Amended Notice of Tort Claim, that Nollan's conduct

2    violated Mr. Walker's Constitutional rights and property right protections.

3        74.    Upon information and belief, the Board and individual Board members

4    with policy making authority ratified Mr. Walker's unlawful termination even

5    though said officials knew, through Nollan and the District's policies and procedures

6    that Mr. Walker was a certificated or classified employee or hybrid of both and that

7    Mr. Walker's termination did not comport with the District's policies and

8    procedures.

9        75.    Upon information and belief, the District and Board officials with policy

10    making authority ratified Mr. Walker's unlawful termination even though said

11    officials knew, through Nollan and the District's policies and procedures, that Mr.

12    Walker was a certificated or classified employee or hybrid of both and that Nollan's

13    termination did not comport with the District's policies and procedures.

14        76.    The District, Board and individual Board members further ratified

15    Nollan's conduct by failing to take steps to remedy the above-referenced

16    misconduct, reinstate Mr. Walker's employment, and hold Nollan accountable for

17    their knowing violations of Mr. Walker's Constitutional rights.

18        77.    By their conduct described herein, the District, Board and individual

19    Board members were motivated by evil motive or intent, and acted in a manner

20

COMPLAINT AND DEMAND FOR JURY TRIAL - 20

1    which involved a reckless and callous disregard of Mr. Walker's Constitutional

2    rights under the Fourteenth Amendment.

3        78.  The Fourteenth Amendment prohibits states from "depriving any person

4    of life, liberty, or property without due process of law."  U.S. Const. Amend. XIV.

5    "Procedural due process rules are meant to protect persons not from the deprivation,

6    but from the mistaken or unjustified deprivation of life, liberty, or property."  *Carey*

7    *v. Piphus*, 435 U.S. 247, 259, 98 S. Ct. 1042, 55 L.Ed.2d 252 (1978).

8        79.  A procedural due process claim has two discrete elements.  First, the court

9    "asks whether there exists a liberty or property interest which has been interfered

10   with by the State."  *Vasquez v. Rackauckas*, 734 F.3d 1025, 1042 (9th Cir. 2013).

11   Second, the court "examines whether the procedures attendant upon that deprivation

12   were constitutionally sufficient."  *Id.*  "The Due Process Clause provides that certain

13   substantive rights – life, liberty, and property – cannot be deprived except pursuant

14   to constitutionally adequate procedures."  *Cleveland Bd. of Educ. v. Loudermill*, 470

15   U.S. 532, 541, 105 S. Ct.  1487, 84 L.Ed.2d 494 (1985).

16       80.  The process is a question of federal, not state law.  However, the property

17   right in employment arises from state law.  *Id.*

18       81.  There can be no doubt that Mr. Walker had a property interest in

19   continued employment which is constitutionally protected.   RCW 28A.400.300

20

COMPLAINT AND DEMAND FOR JURY TRIAL - 21

1    specifically provides that certificated and classified employees can only be

2    discharged from employment "for sufficient cause." *Id.*

3          82.  As a result, Mr. Walker was due pretermination process before he was

4    ultimately terminated.  A public employee with a constitutionally protected interest

5    in his or her continued employment is entitled to some form of process prior to being

6    terminated.  *Loudermill*, 470 U.S. at 538-39.

7          83. The District, Board and individual Board members violated Mr. Walker's

8    due process by failing to provide him with pretermination notice either orally or in

9    writing of the notice of the charges against him, an explanation or disclosure by the

10   District, Board and individual Board members of the alleged evidence against him,

11   and an opportunity "to present his side of the story."  *Id.* at 546.  Mr. Walker's

12   opportunity to be heard had to have occurred before he was terminated.

13         84.  First, pursuant to RCW 28A.400.300, Mr. Walker could not have been

14   terminated before he was given notice of probable cause of his termination and

15   provided opportunity for a hearing.  In other words, any termination before this date

16   would not have been given effect.

17         85. The District, Board and individual Board members violated Mr. Walker's

18   procedural due process rights by failing to provide him with pretermination notice

19

20   COMPLAINT AND DEMAND FOR JURY TRIAL - 22

and post-termination notice of his right to appeal his termination and have an adversarial hearing before an administrative law judge.

86.  As a consequence, Mr. Walker has suffered special and general damages for which he is entitled to recover.

### 4. Violation of First Amendment Rights

87.  Mr. Walker reincorporates and reasserts paragraphs 1 through 86 as if fully set forth herein.

88.  The First Amendment protects against government infringement of employees' free exercise of speech, assembly and association.  *Pickering v. Board of Ed.*, 391 U.S. 563, 88 S. Ct. 1731, 20 L.Ed.2d 811 (1968).

89.  The protection of speech for government employees extends to the employee discussing issues of public concern.  *Connick v. Myers*, 461 U.S. 138, 103 S. Ct. 1684, 75 L.Ed.2d 708 (1983).

90.  Under 42 U.S.C. § 1983, a public employee may state a cause of action for discharge or other discipline resulting from the exercise of rights guaranteed under the First Amendment.

91.  A public employee who alleges retaliatory discharge from government employment must show:  (1) the conduct that triggered the discharge was protected under the First Amendment, and (2) the protected conduct was a substantial or

COMPLAINT AND DEMAND FOR JURY TRIAL - 23

motivating factor in the adverse employment decision.  *Smith v. Bates Tech. Coll.,* 139 Wn.2d 793, 812 (2000).

92.    Where the alleged retaliation is based on expressive conduct constituting speech, a court must first determine whether the speech can be characterized as addressing a matter of public concern.

93.    RCW 42.41.030(1) specifically provides that local government employees have "the right to report to the appropriate person or persons' information concerning an alleged improper governmental action."

94.  Mr. Walker reported to the Board his public concern about the District's Special Education Program and that it was out of balance and lacked cost containment.  Mr. Walker also raised a public concern about Kimmel failing to seek reimbursement from the government in order to reduce the waste of taxpayer funds.

95.  By repeatedly raising these public concerns, Mr. Walker's speech related to more than a purely private issue only involving Mr. Walker, but matters involving potential waste by the government of taxpayer funds.

96.    The very next day after last raising these concerns, Mr. Walker was notified of his termination.

97.    As a consequence, Mr. Walker has suffered special and general damages for which he is entitled to recover.

COMPLAINT AND DEMAND FOR JURY TRIAL - 24

### 5. Breach of Contract

98.  Mr. Walker reincorporates and reasserts paragraphs 1 through 85 as if fully set forth herein.

99.  The elements of a breach of contract claim in Washington are:  (1) the existence of a valid contract between the parties, (2) breach by the defendant, and (3) damages.  *See Hearst Communications, Inc. v. Seattle Times Co.*, 154 Wash.2d 493, 115 P.3d 262 (2005).

100.  In a breach of contract case, the injured party has a right to recover all damages that accrue naturally from the breach, including any incidental or consequential losses caused by the breach. *Panorama Village Homeowners Ass'n v. Golden Rule Roofing, Inc.*, 102 Wash. App. 422, 430, 10 P.3d 417 (2000).

101.  Mr. Walker can provide sufficient evidence to meet all of the elements of a breach of contract claim.

102. Mr. Walker had a written contract of employment with the District for the 2016-2017 school year.  Washington law required that Mr. Walker could only be terminated for cause.  Mr. Walker was entitled to pre-termination and post-termination notice.

103. The District, Board and the individual Board members breached Mr. Walker's contract by terminating him without providing the required notices set

forth above. The Board and its individual Board members were not satisfied with Mr. Walker's performance relating to his alleged behavior and working relationship with Mills.  The Board fired Dr. Farris when he refused to fire Mr. Walker and instead replaced him with a stooge (Nollan) who would do their bidding.

104.  As a consequence of the breach, Mr. Walker is entitled to recover all damages that naturally accrue from the breach.

**6. Age and Gender Discrimination and Retaliation under chapter RCW 49.60 et. seq.**

105.  Mr. Walker reincorporates and reasserts paragraphs 1 through 92 as if fully set forth herein.

106.  The Washington Law Against Discrimination ("WLAD") (RCW 49.60) prohibits discrimination and retaliation against individuals in the area of discharge of employment.

107.  The WLAD is liberally construed by the courts for the purpose of enforcing the broad remedial schemes which are available to victims of invidious discrimination and retaliation.

108.  Mr. Walker is a member of the protected classes described herein.

109.  At the time of Mr. Walker's wrongful discharge, he was satisfactorily performing his job duties.

COMPLAINT AND DEMAND FOR JURY TRIAL - 26

110.  Mr. Walker was in fact discharged.

111.  Prior to his discharge, Mr. Walker had made complaints to the District and Auditor's Office relating to Mills' abuse of overtime and her behavior in the workplace.  Mills is a white female who is younger than Mr. Walker.

112.  Mr. Walker was the victim of disparate treatment in that Mills a white female was not fired, but was in fact promoted due to her conduct in unduly influencing the Board to have the Superintendent fire Mr. Walker without cause for his reporting of abuse of overtime to the Auditor's office.  Mr. Walker was also the victim of disparate treatment in that both Mills and Walker alleged inappropriate behavior in the workplace against each other, yet only Mr. Walker was terminated over the same behavior that was never substantiated after an investigation by outside counsel. Mills was promoted effective July 1, 2017.  Mr. Walker was not treated in a similar fashion to Mills, although both were similarly situated – accused of inappropriate behavior in the workplace.

113.  Mr. Walker's age and gender was a substantial factor for his discharge by the District, Board and individual Board members.

## V. PRAYER FOR RELIEF

Mr. Walker respectfully prays for the following relief:

COMPLAINT AND DEMAND FOR JURY TRIAL - 27

A. Compensation for all injuries and damages suffered including, but not limited to, both economic and non-economic damages, in an amount to be proven at trial including back pay, front pay, pre and post judgment interest, lost benefits of employment, adverse tax consequences of any award for economic damages pursuant to the WLAD, exemplary damages, punitive damages, and general damages relating to emotional distress and mental anguish damages as provided by law.

B. Mr. Walker's reasonable attorneys' fees and a multiplier to those fees, expert fees, and costs, pursuant to 42 U.S.C. § 1988, and as otherwise provided under law under RCW 49.48.030 and 49.60.030(2), as well as the *private attorney general* theory of recovery of reasonable attorney fees and costs in employment related cases.

C. For such other and further relief as this Court deems just and equitable.

Respectfully submitted this 20th day of October 2017

*/s/ Matthew Crotty*
MATTHEW Z. CROTTY
Crotty & Son Law Firm, PLLC

*/s/ Michael B. Love*
MICHAEL B. LOVE
Michael Love Law, PLLC

Attorneys for Plaintiff

COMPLAINT AND DEMAND FOR JURY TRIAL - 28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

COMPLAINT AND DEMAND FOR JURY TRIAL - 29